IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| David Beckham, Kirstie Beckham, and Rent My Timeshare Co., | ) ) ) ) | C. A. No. _____ |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **VERIFIED COMPLAINT** <br> **JURY TRIAL DEMANDED** |
| Charles Howard, WebRenew, LLC, and RentShare, LLC, | ) ) ) ) | |
| Defendants. | ) ) ) | |

NOW COME the plaintiffs, David Beckham, Kirstie Beckham, and Rent My Timeshare Co. (collectively "Plaintiffs"), complaining against WebRenew, LLC, RentShare, LLC, and Charles Howard (hereinafter "Howard"), would respectfully allege and show the Court as follows:

## PARTIES AND JURISDICTION

1.      David Beckham is a resident and citizen of Horry County, South Carolina.

2.      Kirstie Beckham is a resident and citizen of Horry County, South Carolina.

3.      Rent My Timeshare Co. (hereinafter "RMT") is a statutory close corporation organized under the laws of the State of South Carolina.

4.      Upon information and belief, WebRenew, LLC (hereinafter "WebRenew") is a limited liability company organized under the laws of the State of South Carolina.

5.      Upon information and belief, RentShare, LLC (hereinafter "RentShare") is a limited liability company organized under the laws of the State of South Carolina.

6.      Upon information and belief, Charles Howard is a resident and citizen of Georgetown County, South Carolina.

3

7.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a), and 1367.

8.      This Court has personal jurisdiction over Defendants as each Defendant resides or is incorporated in this State and District.

9.      Venue is proper in this Court under the provisions of 28 U.S.C. § 1391, as each Defendant resides in this State and District and Defendants are subject to personal jurisdiction in this State.

## FACTUAL BACKGROUND

10.     David and Kirstie Beckham (collectively "the Beckhams") formed Roots and Arrows Real Estate Investments, LLC (hereinafter "Roots") on May 29, 2020. Roots offered various timeshare management services.

11.     The Beckhams decided to rebrand Roots as RMT in March 2022.

12.     To facilitate this rebrand, The Beckhams employed Howard and his website design company, WebRenew, to design and create a website for RMT and register the domain name <rentmytimeshare.io>. The Beckhams paid WebRenew $7,000 for its services. WebRenew advertises this project on its own website as an example of how it has "helped businesses succeed."



13.     Howard and WebRenew created this website to Plaintiffs' satisfaction. The domain is located at <rentmytimeshare.io>. RMT's website was used to advertise and bring new customers to RMT through March 2025.

14.     In October 2024, Plaintiffs began paying Howard $23,000 per month as an independent contractor to perform web and information technology services for RMT. Howard was to design and implement numerous data storage, management, and analysis solutions for RMT. Despite paying Howard over $100,000 over the next five months to complete this work, Howard largely failed to complete any of these projects.

15.     Plaintiffs provided Howard with passwords and confidential login information to

allow him to complete work on behalf of RMT.

16.    Unbeknownst to Plaintiffs, Howard established RentShare several years earlier in June 2022. RentShare offered timeshare rental services identical to those offered by RMT and was created in direct competition to RMT.

17.    Plaintiffs were unaware of the existence of Rentshare as a direct competitor to RMT until March 2025, shortly prior to the filing of this lawsuit.

18.    In March 2025, Howard utilized his administrator privileges to shut down all RMT email accounts.  Howard then blocked the Beckhams' access to the RMT domain and any sites associated with the website, including but not limited to, all RMT social media pages and the RMT Google Workspace housing confidential client data and sensitive company information.  Howard then began re-routing all internet traffic from RMT's website <rentmytimeshare.io> to RentShare's website <rentshare.io>.

19.    Due to Howard's actions, numerous customers have reached out to David Beckham directly regarding their inability to contact RMT regarding rentals and sales.

20.    Howard has attempted to extort Plaintiffs by demanding $100,000 for the return of control of the domain:



21.     RMT is unable to advertise whatsoever, as any links to its website automatically redirect to RentShare's website. As such, RMT is unable to obtain any new customers.

22.     Current customers are frustrated, as they are unable to contact RMT regarding their rentals.

23.     RMT has lost a significant amount of revenue due to Howard's actions. RMT loses more revenue with every day that Howard remains in control of its domain, emails, and affiliated websites and blocks Plaintiffs' access to its property.

24.     Both RMT and RentShare's services are advertised, distributed, offered for sale, and/or sold to the same class of consumers, within the same industry, through the same channels of trade, including through their respective websites.

25.     Defendants' unauthorized use of the confusingly similar designation RentShare in

7

connection with identical services and redirecting of internet traffic to RentShare's domain has caused multiple instances of confusion among consumers as to the affiliation, connection, association, origin, sponsorship, or approval of Defendants' services with or by Plaintiffs.

26.     Plaintiffs' name, reputation, and goodwill are suffering, and have been damaged, as a result of Defendants' conduct.

27.     Defendants' actions have been intentional, willful, malicious, and in complete disregard of Plaintiffs' rights.

28.     Defendants' activities have caused and will continue to cause damage to Plaintiffs by, *inter alia*, harming Plaintiffs' business, goodwill, and reputation.

29.     Plaintiffs are suffering irreparable harm and damages as a result of Defendants' acts in an amount not yet determined.

30.     Defendants' unlawful conduct has irreparably harmed Plaintiffs, and unless enjoined will continue to harm Plaintiffs through injury and loss to Plaintiffs' business, reputation, and goodwill.

## FOR A FIRST CAUSE OF ACTION
### Trademark Infringement
### (15 U.S.C. § 1125(a)(1))

31.     Plaintiffs incorporate by reference all the allegations in the above paragraphs as if they were fully restated herein.

32.     Rent My Timeshare is a highly distinctive mark in the timeshare management industry.

33.     Defendants willfully and knowingly used, and continue to use, the RMT Mark in commerce for purposes of advertising and selling infringing services to consumers without Defendants' consent.

8

34.     The services Defendants advertise by utilizing the RMT Mark are not authorized for sale by Plaintiffs.

35.     Defendants' use of the RMT Mark in connection with their unauthorized sale of services has already caused numerous instances of confusion and mistake and is likely to continue to cause confusion, mistake, or deceive because it suggests that the services offered for sale are affiliated with, connected with, associated, sponsored by, or approved by Plaintiffs when they are not.

36.     Defendants' unauthorized use of the RMT Mark has infringed upon and materially damaged the value of the RMT Mark and caused significant damage to RMT's business relationships.

37.     As a proximate result of Defendants' actions, RMT has suffered, and will continue to suffer, immediate and irreparable harm. RMT has also suffered, and continues to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

38.     RMT is entitled to recover its damages caused by Defendants' infringement of the RMT Mark and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

39.     RMT is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, RMT will suffer irreparable harm.

40.     RMT is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed upon the RMT Mark, making this case exceptional.

9

## FOR A SECOND CAUSE OF ACTION
### Anti-Cybersquatting Act
### (15 U.S.C. § 1125(d))

41.     Plaintiffs incorporate by reference all the allegations in the above paragraphs as if they were fully restated herein.

42.     Upon information and belief, Defendants willfully and deliberately registered the <rentshare.io> domain name with the bad faith intent to profit from RMT's reputation and goodwill.

43.     By using the designation RentShare and automatically redirecting all internet traffic from RMT's domain, <rentmytimeshare.io>, Defendants are actively diverting consumers looking for Plaintiffs' services to Defendants' website, where Defendants are offering services identical to Plaintiffs' services.

44.     Rent My Timeshare is a highly distinctive mark in the timeshare management industry.

45.     Defendants' use of the domain name <rentshare.io> as a shortened form of <rentmytimeshare.io> is confusingly similar to consumers such that numerous RMT clients have contacted the Beckhams regarding the change and expressing concern.

46.     As a result of Defendants' cybersquatting as alleged herein, Plaintiffs have suffered damages, including lost sales, lost profits, and lost goodwill.

47.     Defendants' acts of cybersquatting have caused irreparable injury to Plaintiffs' reputation and goodwill. Upon information and belief, unless restrained and enjoined, Defendants will continue their acts of unfair competition.

48.     Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and the equitable authority of this Court to redress the harm Defendants have caused and will continue

to cause until their conduct is restrained.

## FOR A THIRD CAUSE OF ACTION
### Common Law Trademark Infringement

49.     Plaintiffs incorporate by reference all the allegations in the above paragraphs as if they were fully restated herein.

50.     Defendants' use of the designation RentShare in connection with the advertisement, distribution, and/or sale of timeshare rental services is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship or approval of Defendants' services by Plaintiffs.

51.     By using the designation RentShare in connection with services identical to those offered by RMT, in the same geographic area of business and channels of trade, Defendants are infringing Plaintiffs' trademark rights in the RMT Marks.

52.     As a result of Defendants' infringement, numerous RMT clients have contacted the Beckhams expressing confusion, concern, and frustration.

53.     As a result of Defendants' infringement, Defendants have been unjustly enriched and Plaintiffs have suffered damages, including lost sales, lost profits, and lost goodwill.

54.     Defendants' infringement of Plaintiffs' rights in the RMT Marks has caused irreparable injury to Plaintiff's reputation and goodwill. On information and belief, unless restrained and enjoined, Defendants will continue to infringe Plaintiffs' trademark rights.

55.     Plaintiffs are entitled to injunctive relief to redress the harm Defendants have caused and will continue to cause until their conduct is restrained.

## FOR A FOURTH CAUSE OF ACTION
### Unfair Trade Practices
### (S.C. Code Ann. § 39-5-20 *et seq.*)

56.     Plaintiffs incorporate by reference all the allegations in the above paragraphs as if

they were fully restated herein.

57.     Defendants' acts have alleged herein have been willful, reckless, wanton, egregious, unfair, unethical, deceptive, and unscrupulous.

58.     Defendants' conduct, which is in or affecting commerce, constitutes unfair methods of competition and/or unfair and deceptive acts or practices, within the meaning of S.C. Code Ann. § 39-5-20 *et seq.* and South Carolina common law.

59.     Plaintiffs have been damaged by Defendants' conduct and are entitled to actual damages, punitive damages, treble damages, attorney fees, and injunctive relief pursuant to S.C. Code Ann. § 39-5-20 *et seq.* and other applicable law.

## FOR A FIFTH CAUSE OF ACTION
### Conversion

60.     Plaintiffs incorporate by reference all the allegations in the above paragraphs as if they were fully restated herein.

61.     Plaintiffs exclusively own the rights to the domain <rentmytimeshare.io>.

62.     Defendants were not authorized by Plaintiffs to reroute the domain to <rentshare.io> or to restrict Plaintiffs' access to the domain.

63.     Defendants' conduct constitutes theft and conversion of property belonging to and owned by Plaintiffs exclusively.

64.     To date Plaintiffs have suffered actual damages from such theft and conversion and use, and will suffer further and additional damages if Defendants are not restrained and enjoined from further use of the domain and associated websites and email addresses.

65.     Plaintiffs are entitled to an award of actual and punitive damages for such conversions.

66.     Moreover, Plaintiffs are entitled to equitable relief, including, but not limited to:

a. An order enjoining Defendants from restricting access to RMT-affiliated websites and email addresses.

b. Requiring Defendants to relinquish control of all RMT-owned and afilliated websites and email addresses.

**FOR A SIXTH CAUSE OF ACTION**
**Misappropriation of Trade Secrets**
**(S.C. Code Ann. § 39-8-10 *et seq.*)**

67.    Plaintiffs incorporate by reference all the allegations in the above paragraph as if they were fully restated herein.

68.    Plaintiffs' property, including but not limited to, pricing information, email correspondence, business models, customer lists, and marketing strategies constitute trade secrets under the South Carolina Trade Secrets Act, in that they constitute information that includes patterns, compilations, programs, methods, techniques, products, systems, designs, prototypes, and code that derives independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by the public or other person who can obtain economic value from its disclosure or use, and are subject to efforts by RMT that are reasonable under the circumstances to maintain their secrecy.

69.    Knowledge and access by Defendants of such trade secrets was allowed while Howard was a contractor for RMT with the acknowledgement and understanding that such trade secrets were to be held confidential at all times.

70.    Defendants wrongfully misappropriated various trade secrets of RMT including, but not limited to, accessing and misappropriating the following: pricing information, email correspondence, business models, customer lists, and marketing strategies.

71.    On and after March 2025, Defendants have utilized such misappropriated trade secrets for their own personal benefit to compete unfairly with Plaintiffs to the detriment of Plaintiffs in violation of the South Carolina Trade Secrets Act.

13

72.     To date, Plaintiffs have suffered actual damages from such misappropriation and will suffer further and additional damages if Defendants are not restrained and enjoined.

73.     Plaintiffs are entitled to a judgment of this Court finding in its favor as follows:

    a.  That Plaintiffs' previously listed property constitute trade secrets under the South Carolina Trade Secrets Act;

    b.  That Defendants wrongfully misappropriated such trade secrets in violation of the South Carolina Trade Secreats Act;

    c.  The Defendants have utilized such wrongful misappropriation in an amount to be determined at trial;

    d.  That Defendants, and all persons acting in concert with them, be temporarily, preliminarily and permanently restrained and enjoined from further wrongful misappropriation and use of such trade secrets; and be ordered to return to Plaintiffs all materials that contain or refer to such trade secrets.

WHEREFORE, Plaintiffs request that judgment be entered against Defendants on all causes of action and that the Court:

a)  Permanently enjoin Defendants, their officers, agents, representatives, employees, and those persons acting in concert or participation with Defendants, from utilizing the designation RentShare, or any other mark, word, name, symbol, or slogan which is likely to cause confusion, mistake, or deception with respect to Plaintiffs' RMT Mark, pursuant 15 U.S.C. § 1116(a);

b)  Permanently enjoin Defendants, their officers, agents, representatives, employees, and those persons acting in concert or participation with Defendants, from further accessing, controlling, or otherwise restricting Plaintiffs' own access to RMT-affiliated websites,

14

email addresses, and the RMT domain, and return of all social media accounts;

c)      Grant Plaintiffs equitable relief in order to stop the harm caused to Plaintiffs; and

d)      Grant Plaintiffs such other and further relief as this Court and jury deem just and proper.

Respectfully submitted,

s/ Eric R. Tonnsen
Eric R. Tonnsen, Federal Bar #09898
Sheldon Newman, Federal Bar #14410
Tonnsen Bach Law Firm
880 Island Park Drive
Charleston, SC 29492
Telephone (843)548-1670
*etonnsen@tonnsenbach.com*
*snewman@tonnsenbach.com*

s/ A. Preston Brittain
B.  Preston Brittain, Federal Bar #10408
Brittain Law Firm
4614 Oleander Drive
Myrtle Beach, SC 29577
Telephone (843) 449-8562
*preston@brittainlawfirm.com*

April 17, 2025

15